Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
4974 South Rainbow Blvd., Suite 100
Las Vegas, Nevada  89118
Telephone: 702-420-2001
ecf@randazza.com

***Attorneys for Plaintiffs,***
***Diandra "Fu" Debrosse Zimmermann and***
***DiCello Levitt LLC***

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANDRA "FU" DEBROSSE ZIMMERMANN and DICELLO LEVITT LLC,<br><br>            Plaintiffs,<br>v.<br><br>LEADCLIENT, INC.; SELECT JUSTICE, LLC; AAL MEDIA, LLC; JUSTICE HERE, LLC; INVENTIVE SOLUTIONS, LLC; and JONATHAN GOTTFRIED,<br><br>            Defendants. | Case No. **'23CV581  AGS NLS**<br><br>**COMPLAINT FOR**<br>**(1) Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125;**<br>**(2) Violation of California Right of Publicity Law, Cal. Civ. Code § 3344;**<br>**(3) Violation of Alabama Right of Publicity Law, AL Code §§ 6-57-770 to 774;**<br>**(4) California Common Law Right of Publicity;**<br>**(5) Violation of California Unfair Competition Law; and**<br>**(6) Conspiracy**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiffs Diandra "Fu" Debrosse Zimmermann ("Fu") and DiCello Levitt LLC ("DiCello Levitt") (collectively, "Plaintiffs") hereby file their Complaint against Defendants LeadClient, Inc.; Select Justice, LLC; AAL Media, LLC; Justice Here, LLC; Inventive Solutions, LLC; and Jonathan Gottfried (collectively, "Defendants") for: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125; (2) violation of California's right of publicity statute, Cal. Civ. Code § 3344; (3) violation of Alabama's right of publicity statute, AL Code §§ 6-57-770 to 774; (4) infringement of Fu's common law right of publicity; (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (6) conspiracy. Plaintiffs make the following allegations upon personal knowledge as to their own acts, upon information and belief and their attorneys' investigation as to all other matters, and allege as follows:

## **INTRODUCTION**

1.      Defendants collectively operate a network of lead generation websites and social media accounts, by which they solicit and attract clients that they then refer to attorneys for a referral fee.

2.      In an effort to increase the number of potential clients for them to refer to attorneys and, in turn, increase their profits, Defendants misleadingly and deceptively used Fu's name, image, and likeness in their advertisements, without

1  her consent, because they knew that Fu's and DiCello Levitt's acclaim and expertise

2  would add credibility to their lead generation services.

3       3.    Fu is a renowned attorney, employed as a partner of DiCello Levitt.

4  Fu is a Black woman who has made a name for herself pursuing justice for other

5  Black women who have suffered damages caused by faulty hair relaxer products,

6  which are designed and marketed for use primarily by Black women.

7       4.    As a Black woman, Fu has a greater degree of understanding, empathy,

8  and familiarity with issues surrounding a product aimed at her demographic—and,

9  for that reason, has a built-in sense of trust among potential hair relaxer clients.

10      5.    While there is certainly no requirement that a lawyer who handles a

11 case be the same ethnicity as her clients, Defendants know that many potential hair

12 relaxer clients are attracted to advertisements that falsely suggest they will be

13 represented by a renowned Black woman, like Fu—as opposed to White male

14 attorneys.

15      6.    To overcome Fu's advantage, Defendants sought to unfairly compete

16 with Fu and enrich themselves by misleadingly and deceptively using her image,

17 without her consent, in advertisements designed to attract hair relaxer clients.

18      7.    Below is an advertisement of Defendants in which they insultingly

19 masquerade as Fu, using a photograph taken from the initial press conference held

20 when announcing DiCello Levitt's filing of the first hair relaxer lawsuit.



8. While it would be wrong and unlawful even if another Black woman had misappropriated Fu's likeness for her ads, Defendants' actions are even more offensive because they are attempting to masquerade as Fu in an act of advertising colonization—deceptively using a Black woman's likeness in an attempt to unfairly compete with Fu in a profession traditionally dominated by White males.

9. Defendants' unlawful, tortious, and racist actions should be enjoined and they should be required to compensate Fu and DiCello Levitt for the damages caused by their wrongful conduct.

## PARTIES

**A. Plaintiffs**

10. Plaintiff Fu is, and at all relevant times was, a resident of Alabama. She is a renowned attorney, employed as a partner of DiCello Levitt.

11. DiCello Levitt is a law firm with a national and international practice, with offices in Alabama, Illinois, Ohio, New York, California, and Washington, D.C.

**B. Defendants**

12. Defendant LeadClient, Inc. ("LeadClient") is a Delaware corporation licensed to do business in California, with its principal place of business in San Diego County, California. LeadClient owns and operates the website <leadclient.com>, which is a lead generation website advertising services to attorneys, by which LeadClient attracts potential clients and refers them to licensed attorneys. LeadClient receives a referral fee from the attorneys that obtain clients from its referrals. Its sole officer is Defendant Jonathan Gottfried.

13. Defendant Select Justice, LLC ("Select Justice") is a California limited liability company with its principal place of business in San Diego County, California. Select Justice owns and operates the website <selectjustice.com>, which is another lead generation website, though this one advertises Select Justice's services to potential clients, rather than attorneys. Its sole manager is Defendant Inventive Solutions, LLC ("Inventive Solutions").

14. Defendant AAL Media, LLC ("AAL Media") is a California limited liability company with its principal place of business in San Diego County, California. AAL Media owns and operates the website <attorneyatlaw.com>, which

is another client-facing lead generation website that operates in the same manner as <selectjustice.com>. On information and belief, its sole manager is either Inventive Solutions or Jonathan Gottfried.

15.   Defendant Justice Here, LLC ("Justice Here") is a California limited liability company with its principal place of business in San Diego County, California. Justice Here owns and operates the websites <justicehere.com> and <hairstraightenersandcancer.com>.   As   with   <selectjustice.com>   and <attorneyatlaw.com>, these are client-facing lead generation websites. Justice Here's sole manager is Inventive Solutions.

16.   Defendant Inventive Solutions is a Wyoming limited liability company with its principal place of business in Laramie County, Wyoming. Its President is Defendant Jonathan Gottfried.

17.   Defendant Jonathan Gottfried is an individual residing in San Diego County, California.

18.   Collectively, Defendants operate a network of lead generation websites, by which they solicit and attract clients that they then refer to attorneys for a referral fee. Defendant Gottfried is the sole officer of Defendants LeadClient, Select Justice, AAL Media, Justice Here, and Inventive Solutions, and is directly responsible for the actions of each of them.

//

## <u>JURISDICTION AND VENUE</u>

19.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 as well as 15 U.S.C. §§ 1121(a) and 1125(a)(1)(A), as Plaintiffs bring a federal claim under the Lanham Act. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, as they form part of the same case or controversy as Plaintiffs' claim under the Lanham Act.

20.     This Court has personal jurisdiction over Defendants because they reside, conduct business, and caused harm and tortious injury in the state of California.

21.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), as all Defendants other than Inventive Solutions reside in this District, and the unlawful and tortious actions on which Plaintiffs' claims are premised occurred in this District.

## <u>FACTUAL ALLEGATIONS</u>

**A. Plaintiffs and the Hair Straightener Litigation**

22.     Fu is an Alabama attorney with a national reputation for her role in national mass tort lawsuits. During her legal career, she has recovered millions of dollars in damages for her clients from large corporate defendants and has received awards for her legal work.

//

23. Fu is a partner of DiCello Levitt, and the legal work on which her reputation is based was performed while she was a DiCello Levitt partner.

24. Fu is also a Black woman and has achieved recognition within the Black legal community, including the 2022 Black Leadership Award from the Profiles in Diversity Journal.

25. In October of 2022, Fu and attorney Benjamin Crump filed a lawsuit in the United States District Court for the Northern District of Illinois on behalf of a woman who used chemical hair straightening products made and sold by cosmetics company L'Oréal, among others. The lawsuit alleges that these products caused her and other women to be at an increased risk of uterine cancer and other serious diseases. Several other women—predominantly Black women because of the nature of the defective product at issue—have since joined this litigation as plaintiffs.

26. At the time Fu filed this lawsuit, she held a press conference in which she, the plaintiff in the suit, and fellow attorney Ben Crump discussed the lawsuit, the nature of the plaintiff's claims, and the significance of the lawsuit for Black women who have been using defective hair straightening products for years.

27. The lawsuit and the press conference received significant media attention, with national publications such as *CNN*, *FOX News*, and *Good Morning America* publishing articles and live news stories about them. These articles and

stories mentioned Fu by name and included photos or video of Fu at the press conference.

28.     The lawsuit was filed after the Journal of the National Cancer Institute published a study estimating that women who used hair straightening chemical products were more than twice as likely to develop uterine cancer by age 70, and that this increased risk was most pronounced in Black women, due to their higher rate of using such products.

29.     It is well known among the general public that Fu is an attorney with DiCello Levitt, and all media coverage of the hair relaxer lawsuit that mentioned Fu also mentioned that she was an attorney with DiCello Levitt.

**B. Defendants' Business Model and Conduct**

30.     Defendants collectively operate a network of lead generation websites and social media accounts. While Defendants are not lawyers or law firms, they make agreements with attorneys by which their websites attract potential clients and refer them to licensed attorneys. Defendants then obtain a referral fee for the clients they refer.

31.     After Fu's press conference occurred and the scientific study mentioned above was published, it became apparent to Defendants that there would likely be a surge in products liability lawsuits against chemical hair straightener manufacturers, with Black women likely making up the majority of such plaintiffs.

32.     Not wanting to miss out on this source of referral fees, starting in October or November of 2022, Defendants began to advertise their referral services to the general public on their websites and social media accounts, specifically discussing the above hair straightener lawsuit and encouraging women who have used such products to use their services to obtain attorneys.

33.     At least one of the advertisements Defendants published for their services included a photograph of Fu, without her permission, taken from the initial press conference, as follows:



34. Defendants published this image as part of a video on the hairstraightenersandcancer.com website. On information and belief, Defendants published this image on other websites and/or social media accounts they own and operate.

35. On information and belief, Defendants have continuously published this advertisement, starting no later than November 2022 and continuing through the present day.

36. The intake form for the hairstraightenersandcancer.com website states "By clicking the Submit button, I consent to being contacted by Select Justice, LLC, AAL Media, LLC, LeadClient, Inc. or a law firm at the number I provided." Each of these Defendants had knowledge of, and participated in, the creation and publication of the advertisement deceptively using Fu's photograph and likeness without her consent.

37. As the only managers and officers of LeadClient, AAL Media, Select Justice, and Justice here, Defendants Inventive Solutions and Gottfried had knowledge of, and participated in, the creation and publication of the misleading and deceptive advertisement using Fu's photograph and likeness.

38. On information and belief, Defendants LeadClient, AAL Media, Select Justice, Justice Here, and Inventive Solutions are alter egos of Gottfried. He is the sole officer of each of these entities, none of these entities regularly undertake

1  corporate formalities, and each of these entities intermingles funds with one another

2  and Gottfried.

3      39.    Defendants knowingly and intentionally used Fu's photograph and

4  likeness in this advertisement without her knowledge or consent in order to give the

5  false impression to potential hair relaxer clients that they would be represented by

6  Fu.

7      40.    On information and belief, Defendants have used Fu's name,

8  photograph, or likeness in other advertisements for their services without her

9  knowledge or consent to misleadingly obtain potential clients for which they can

10 recover substantial referral fees. Discovery will uncover such unauthorized uses.

11     41.    Fu has never given any Defendants permission to use her name,

12 photograph, or likeness for any purpose.

13     42.    Defendants' use of Fu's photograph and likeness creates the

14 impression among reasonable consumers that Fu is associated with, sponsors,

15 and/or endorses Defendants and their services.

16     43.    Defendants' use of Fu's photograph and likeness also creates the

17 impression among reasonable consumers that, as Fu's employer, DiCello Levitt is

18 associated with, sponsors, and/or endorses Defendants and their services.

19     44.    Fu and DiCello Levitt do not, and have never, been associated with,

20 sponsored, or endorsed Defendants or their services.

45.     Defendants have actual knowledge that they did not have consent to use Fu's name, photograph, or likeness for any purpose. Defendants never even attempted to contact Fu or DiCello Levitt regarding their use of her name, photograph, and likeness. Had Defendants done so, Fu and DiCello Levitt would have informed them that, under no circumstances were they permitted to use Fu's name, image, or likeness for any purpose.

46.     Defendants specifically intended to profit by their unauthorized and deceptive use of Fu's name, photograph, and likeness. They have actual knowledge that Fu is a well-known attorney and has received a large amount of publicity in connection with the emerging field of chemical hair straightener lawsuits. Indeed, their network of websites contains pages mentioning Fu and discussing media coverage of Fu. They also have actual knowledge that Fu is an attorney with DiCello Levitt.

47.     Defendants misleadingly used Fu's name, image, and likeness because they believed that Fu and DiCello Levitt's fame and expertise would add credibility to their lead generation services, resulting in an increased number of clients for them to refer to attorneys, which would, in turn, lead to an increase in the referral fees they receive.

48.     Furthermore, Defendants, in a cynical and exploitative scheme, believed that it would be especially profitable to use Fu's name, photograph, and

likeness because she was a Black woman and most of the clients for chemical hair straightener lawsuits would also be Black women. Defendants specifically sought to profit from Fu's reputation within the Black legal community by giving potential clients the false impression that she was associated with or endorsed their services.

## CLAIMS FOR RELIEF

### COUNT I
### Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125
### (On Behalf of Fu and DiCello Levitt)

49.    Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 1-48, as if set forth fully herein.

50.    Defendants used an image of Fu as part of an advertisement for their services.

51.    Defendants' advertisement constitutes commercial speech.  It was part of an advertisement, it falsely implied that Defendants' services were sponsored, endorsed, or approved by Fu and DiCello Levitt, and Defendants created and published the advertisement for the sole commercial purpose of obtaining new referral clients.

52.    Defendants used this image of Fu without Plaintiffs' knowledge or consent.

53.     Defendants are in commercial competition with Fu and DiCello Levitt, in that both Plaintiffs and Defendants compete to attract clients for legal services.

54.     Defendants' use of Fu's image has caused confusion, and is likely to cause further confusion, among the consuming public, as Defendants' use creates the false impression among reasonable consumers that Fu and DiCello Levitt are associated with or sponsor, endorse, or approve of Defendants' services.

55.     The false impression of Plaintiffs' association with or sponsorship, endorsement, or approval of Defendants and their services is material to consumers. Potential clients for chemical hair straightener lawsuits are much more likely to purchase a lead generator or law firm's services if they believe Fu and DiCello Levitt are involved.

56.     Defendants used Fu's image for the purpose of influencing consumers to purchase their services. Their motive for using Fu's image was to bank on her fame as a prominent Black female attorney, as well as DiCello Levitt's reputation as a national law firm that employed Fu, to give their services an undeserved and misleading level of credibility to the consuming public, who would then be more likely to purchase their services.

57.     Defendants disseminated their advertisements using Fu's image as part of a marketing campaign that was directed to the relevant purchasing public, *i.e.,* potential plaintiffs for chemical hair straightener lawsuits. This campaign was

carried out on Defendants' multiple websites and social media accounts, accessible to the general public throughout the United States, for the specific purpose of attracting consumers to purchase their services.

58.     Defendants' false and misleading advertisement is likely to cause and has caused competitive commercial injury to Fu and DiCello Levitt, including loss of clients, in an amount in excess of $75,000.

59.     On information and belief, Defendants have profited from their false and misleading advertisement by obtaining unearned referral fees.

60.     Defendants' acts constitute willful, deliberate, false, and misleading representations of fact as to Fu and DiCello Levitt's association with or sponsorship, endorsement, or approval of Defendants' services, in violation of 15 U.S.C. § 1125(a)(1)(A).

61.     Defendants carried out their actions with full knowledge that they were unlawful and in violation of Fu's and DiCello Levitt's rights, and without any possible justification. This case is thus "exceptional" under 15 U.S.C. § 1117(a), entitling Fu and DiCello Levitt to an award of costs and attorneys' fees.

//

//

//

//

## COUNT II
**Violation of California Right of Publicity, Cal. Civ. Code § 3344**
**(On Behalf of Fu)**

62.     Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 1-48, as if set forth fully herein.

63.     Defendants used Fu's name, photograph, and/or likeness as part of one or more advertisements for their services.

64.     Defendants' advertisements using Fu's name, photograph, and/or likeness were published on Defendants' numerous websites and social media accounts, available to the general public across the United States.

65.     There was a direct connection between Defendants' use and their commercial purpose. They used Fu's name, photograph, and/or likeness specifically to obtain more lead generation clients for chemical hair straightener lawsuits, and thus to increase the referral fees they earned.

66.     Defendants' use of Fu's name, photograph, and/or likeness was not in connection with any news, public affairs, or sports broadcast or account, or any political campaign.

67.     Defendants used Fu's name, photograph, and/or likeness without her knowledge or consent.

68.     Defendants had actual knowledge that they did not have Fu's consent to use her name, photograph, or likeness for any purpose, much less in advertising their services.

69.     Defendants' actions constitute a violation of Fu's right of publicity under Cal. Civ. Code § 3344.

70.     Defendants' actions have caused and will continue to cause Fu damages in an amount in excess of $75,000, including but not limited to lost income and business opportunities.

71.     On information and belief, Defendants have profited from their false and misleading advertisement by obtaining unearned referral fees.

72.     Defendants' actions were knowing, deliberate, willful, and malicious, entitling Fu to an award of punitive damages.

73.     Fu is also entitled to an award of costs and reasonable attorneys' fees under Cal. Civ. Code § 3344.

## COUNT III
**Violation of Alabama Right of Publicity, AL Code §§ 6-5-770 to 774**
**(On Behalf of Fu)**

74.     Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 1-48, as if set forth fully herein.

75.     Defendants used Fu's indicia of identity as part of one or more advertisements for their services.

76.     Defendants' advertisements using Fu's indicia of identity were published on Defendants' numerous websites and social media accounts available to the general public across the United States.

77.     There was a direct connection between Defendants' use and their commercial purpose. They used Fu's indicia of identity specifically to obtain more lead generation clients for chemical hair straightener lawsuits, and thus to increase the referral fees they earned.

78.     Defendants' use of Fu's indicia of identity was not a fair use. It was part of a commercial advertisement, purely for profit, as part of a marketing campaign.

79.     Defendants used Fu's indicia of identity without her knowledge or consent.

80.     Defendants had actual knowledge that they did not have Fu's consent to use her indicia of identity for any purpose, much less in advertising their services.

81.     Defendants' actions constitute a violation of Fu's right of publicity under AL Code §§ 6-5-770 to 774.

82.     Defendants' actions have caused and will continue to cause Fu damages in an amount in excess of $75,000, including but not limited to lost income

1  and business opportunities.

2     83.    On information and belief, Defendants have profited from their false

3  and misleading advertisement by obtaining unearned referral fees.

4     84.    Defendants' actions were knowing, deliberate, willful, and malicious,

5  entitling Fu to an award of punitive damages.

**COUNT IV**
**California Common Law Right of Publicity**
**(On Behalf of Fu)**

8     85.    Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 1-

9  48, as if set forth fully herein.

10     86.    Defendants used Fu's name, photograph, and/or likeness as part of one

11  or more advertisements for their services.

12     87.    Defendants' advertisements, using Fu's name, photograph, and/or

13  likeness, were published on Defendants' numerous websites and social media

14  accounts available to the general public throughout the United States.

15     88.    There was a direct connection between Defendants' use and their

16  commercial purpose. They used Fu's name, photograph, and/or likeness specifically

17  to obtain more lead generation clients for chemical hair straightener lawsuits, and

18  thus to increase the referral fees they earned.

19     89.    Defendants' use of Fu's name, photograph, and/or likeness was not in

20  connection with any news, public affairs, or sports broadcast or account, or any

political campaign.

90.     Defendants used Fu's name, photograph, and/or likeness without her knowledge or consent.

91.     Defendants had actual knowledge that they did not have Fu's consent to use her name, photograph, or likeness for any purpose, much less in advertising their services.

92.     Defendants' actions constitute a violation of Fu's common law right of publicity.

93.     Defendants' actions have caused and will continue to cause Fu damages in an amount in excess of $75,000, including but not limited to lost income and business opportunities.

94.     On information and belief, Defendants have profited from their false and misleading advertisement by obtaining unearned referral fees.

95.     Defendants' actions were knowing, deliberate, willful, and malicious, entitling Fu to an award of punitive damages.

//

//

//

//

//

**COUNT V**
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200**
**(On Behalf of Fu and DiCello Levitt)**

96.     Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 1-48, as if set forth fully herein.

97.     Defendants used an image of Fu as part of an advertisement for their services.

98.     Defendants' advertisement constitutes commercial speech. It was part of an advertisement, it implied that Defendants' services were sponsored, endorsed, or approved by Fu and DiCello Levitt, and Defendants created and published the advertisement for the sole commercial purpose of obtaining new referral clients.

99.     Defendants used this image of Fu without Plaintiffs' knowledge or consent.

100.    Defendants are in commercial competition with Fu and DiCello Levitt, in that both Plaintiffs and Defendants compete to attract clients for legal services.

101.    Defendants' use of Fu's image has caused confusion, and is likely to cause further confusion, among the consuming public, as Defendants' use creates the false impression among reasonable consumers that Fu and DiCello Levitt are associated with or sponsor, endorse, or approve of Defendants' services.

102.    The false impression of Plaintiffs' association with or sponsorship, endorsement, or approval of Defendants and their services is material to consumers.

Potential clients for chemical hair straightener lawsuits are much more likely to purchase a lead generator or law firm's services if they believe Fu and DiCello Levitt are involved.

103. There was a direct connection between Defendants' use and their commercial purpose. They used Fu's name, photograph, and/or likeness specifically to obtain more lead generation clients for chemical hair straightener lawsuits, and thus to increase the referral fees they earned.

104. Defendants used Fu's image for the purpose of influencing consumers to purchase their services. Their motive for using Fu's image was to bank on her fame as a prominent Black female attorney, as well as DiCello Levitt's reputation as a national law firm that employed Fu, to give their services an undeserved level of credibility to the consuming public, who would then be more likely to purchase their services.

105. Defendants disseminated their advertisements using Fu's image as part of a marketing campaign that was disseminated to the relevant purchasing public, *i.e.,* potential plaintiffs for chemical hair straightener lawsuits. This campaign was carried out on Defendants' multiple websites and social media accounts, accessible

to the general public throughout the United States, for the specific purpose of attracting consumers to purchase their services.

106.   Defendants' false and misleading advertisements are likely to cause and have caused competitive commercial injury to Fu and DiCello Levitt, including loss of clients, in an amount in excess of $75,000.

107.   On information and belief, Defendants have profited from their false and misleading advertisement by obtaining unearned referral fees.

108.   Defendants' acts constitute willful, deliberate, false, and misleading representations of fact as to Fu's and DiCello Levitt's association with or sponsorship, endorsement, or approval of Defendants' services, in violation of 15 U.S.C. § 1125(a)(1)(A).

109.   Defendants' actions constitute a violation of Fu's right of publicity under Cal. Civ. Code § 3344.

110.   Defendants' actions constitute a violation of Fu's right of publicity under AL Code §§ 6-5-770 to 774.

111.   Defendants' violation of the above-referenced statutes constitutes an unlawful business practice under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL").

112.   Defendants' actions are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. They are exploiting the goodwill of

Plaintiffs without permission to deceptively generate business with a vulnerable segment of the consuming public, victims of chemical hair relaxer products, on false pretenses. Defendants' actions thus constitute an unfair business practice under the UCL.

113. Defendants' actions are likely to deceive members of the public by making them believe that Plaintiffs are affiliated with or endorse Defendants' services. Defendants' actions thus constitute a fraudulent business practice under the UCL.

114. Plaintiffs are entitled to restitution and injunctive relief for Defendants' violation of the UCL.

## COUNT VI
### Conspiracy
### (On Behalf of Fu and DiCello Levitt)

115. Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 1-48, as if set forth fully herein.

116. In October or November 2022, Defendants each entered into an agreement among themselves to use Fu's name, photograph, image, and/or likeness in advertising for their services.

117. Starting in October or November 2022, Defendants each committed overt acts pursuant to their agreement and in furtherance of this conspiracy by creating advertisements using Fu's name, photograph, image, and/or likeness,

operating websites and social media accounts, and posting these infringing and misleading advertisements on them.

118.   As a result of the above conspiracy, Plaintiffs were harmed in an amount in excess of $75,000, including but not limited to lost income and business opportunities.

119.   On information and belief, as a result of the above conspiracy, Defendants have profited by obtaining unearned referral fees.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs Diandra "Fu" Debrosse Zimmermann and DiCello Levitt LLC hereby request relief in their favor and against Defendants as follows:

A.   For a judgment in their favor on the claims set forth above that:

1.   Defendants violated the Lanham Act, 15 U.S.C. § 1125;

2.   Defendants violated California's right of publicity statute, Cal. Civ. Code § 3344;

3.   Defendants violated Alabama's right of publicity statute, AL Code §§ 6-57-770 to 774;

4.   Defendants infringed Fu's common law right of publicity under California law; and

5.   Defendants violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

B.      That the Court enter judgment against Defendants finding that the acts they committed, as set forth in the Complaint, were willful and deliberate, making this an exceptional case;

C.      That the Court issue a preliminary and permanent injunction, enjoining and restraining Defendants and their agents, servants, employees, successors, assigns, and all other persons acting in concert or in conspiracy with or affiliated with Defendants, from using Fu's name, voice, signature, photograph, likeness, or indicia of identity in providing any service or any kind of advertising or promotion of any services without Plaintiffs' express written consent;

D.      That the Court enter judgment against Defendants for compensatory, consequential, and/or incidental damages in an amount in excess of $75,000;

E.      That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of herein;

F.      That Plaintiffs be awarded exemplary or punitive damages against Defendants in an amount appropriate to punish Defendants and to make an example of Defendants to the community;

G.      That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising;

H.   That Plaintiffs be awarded pre-judgment interest on all appropriate damages;

I.   That Plaintiffs be awarded reasonable attorneys' fees and costs incurred in this action; and

J.   For such other and further relief at law or in equity that the Court deems proper.

### JURY DEMAND

Plaintiffs request a jury trial on all issues so triable.

Dated: March 31, 2023.                    Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
Randazza Legal Group, PLLC
4974 South Rainbow Blvd., Suite 100
Las Vegas, Nevada 89118

***Attorneys for Plaintiffs,***
***Diandra "Fu" Debrosse Zimmermann and***
***DiCello Levitt LLC***